857 So.2d 564 (2003)
Nancy AUTHEMENT
v.
WAL-MART.
No. 2002 CA 2434.
Court of Appeal of Louisiana, First Circuit.
September 26, 2003.
*567 Joseph J. Weigand, Jr., Houma, for Plaintiff-Appellant # 2 Nancy Authement.
Catherine E. Orwig, Metairie, for Defendant-Appellant # 1 Wal-Mart.
Before: PETTIGREW, DOWNING and McCLENDON, JJ.
PETTIGREW, J.
In this case, the workers' compensation judge rendered judgment in favor of claimant, awarding workers' compensation benefits, penalties, and attorney fees in connection with a work-related accident. Both claimant and defendant/employer have appealed from said judgment. For the reasons that follow, we reverse in part, amend, and as amended, affirm.

FACTS AND PROCEDURAL HISTORY
On February 14, 2002, claimant, Nancy Authement, filed a disputed claim for compensation with the Office of Workers' Compensation averring entitlement to workers' compensation benefits. Ms. Authement alleged that on July 5, 2001, during the course and scope of her employment with Wal-Mart, she injured herself while she was lifting and stocking merchandise in the dairy department. According to Ms. Authement, she developed sharp pains in her shoulders while she was "down stacking" milk crates. She reported the incident to her immediate supervisor, Darla, and went back to work. Ms. Authement reported to work the following day and did more heavy lifting in the dairy department. The pain in her shoulders continued to worsen, and, on July 7, 2001, Ms. Authement began working as a cashier.
After working as a cashier for approximately one week, Ms. Authement reported the pain in her shoulders to Tina Davis, a customer service manager. Ms. Davis advised her that she should file an accident report. However, Ms. Authement decided to wait because she thought her shoulders were just sore. Thereafter, Ms. Authement started experiencing sharp pains from her neck going down her arms. She ultimately completed an "ASSOCIATE STATEMENT-WORKERS COMPENSATION" ("accident report") on July 19, 2001, indicating that "continuous lifting" was the cause of her injury.
According to the medical evidence in the record, Ms. Authement was initially seen by Dr. Troy Hutchinson on July 17, 2001, with complaints of pain in both shoulders that started following a work-related injury on July 5, 2001. Ms. Authement reported that although the pain had gotten a little better in the days after the accident, she then developed sharp pains down both arms. Dr. Hutchinson prescribed a conservative course of treatment. He also advised Ms. Authement to restrict her work to light-duty with no lifting of anything greater than 10-15 pounds. When Ms. Authement returned on July 23, 2001, she indicated that her pain had gotten a little better, but still described the pain as "sharp." Dr. Hutchinson prescribed three weeks of physical therapy. Ms. Authement attended five physical therapy sessions and did not respond to the treatment. She was last seen by Dr. Hutchinson on September 11, 2001, at which time he referred Ms. Authement to Dr. Gary Guidry, an orthopedic surgeon.
*568 Ms. Authement first saw Dr. Guidry on September 19, 2001, at which time she complained of pain on both sides of her neck that radiated into her shoulders. She also complained of headaches and pain referring into the area between her shoulder blades. Although Ms. Authement had some mild spasm in her neck, Dr. Guidry found that she had full range of motion in her neck and a normal neurological examination. All x-rays were within normal limits, and physical examination of both shoulders was felt to be normal. Because Ms. Authement's symptoms had persisted, Dr. Guidry scheduled her for an MRI and recommended she continue with her work duties but not do any lifting.
The MRI was performed on October 2, 2001, and revealed a disc protrusion at C5 to the right of the midline. During Ms. Authement's next appointment with Dr. Guidry on October 4, 2001, he opined that Ms. Authement's disc protrusion was secondary to her job activities and recommended cervical epidural steroid injections. Dr. Guidry referred Ms. Authement to Dr. Mike Haydel for the injections and advised Ms. Authement that she should not return to work at that time. After having undergone a series of three injections, Ms. Authement returned to see Dr. Guidry on February 7, 2002. Ms. Authement indicated the injections had not helped her, and she was still having neck pain radiating to her right arm. Dr. Guidry recommended that Ms. Authement undergo an EMG and nerve conduction study to determine whether she had nerve root impingement. According to Dr. Guidry's records, these tests were never completed.
Dr. Guidry retired in March of 2002, at which time Ms. Authement began seeing Dr. Larry Haydel, another orthopedic surgeon associated with Dr. Guidry's office. On March 26, 2002, Ms. Authement indicated to Dr. Haydel that the pain in her neck had not improved any. He prescribed pain medication and an anti-inflammatory and advised Ms. Authement to return in six weeks for another evaluation. Ms. Authement returned on May 24, 2002, with complaints of neck pain radiating into her right arm. At that time, Dr. Haydel discussed options available to Ms. Authement, including an anterior cervical fusion. When Ms. Authement was last seen by Dr. Haydel on July 9, 2002, she reported no improvement in her symptoms. Dr. Haydel again discussed the possibility of surgery with Ms. Authement. There is no indication in the record that Ms. Authement ever returned to see Dr. Haydel after this July 2002 visit.
At Wal-Mart's request, Ms. Authement was evaluated for a second opinion on February 7, 2002, by another orthopedic surgeon, Dr. John P. Sweeney. According to Dr. Sweeney's report, he examined Ms. Authement and reviewed all of her medical records to date in preparing his report. Dr. Sweeney found that Ms. Authement had an "[i]ntervertebral disc protrusion at C5-6 with neck pain non radicular." In his letter to Peggy Horton, Claims Manager for Claims Management, Inc. ("CMI"), Dr. Sweeney reported further as follows:
You have asked me to address her current mechanism of injury in reference to a causal relationship to an incident of July 05, 2001. Without a specific injury it is difficult to correlate the disc protrusion at C5-6 with a certain work related event. Your letter dated January 29th, 2002 to me, states that she had no specific injury but discomfort to her shoulder from continuous lifting, pushing and pulling. She reports the same history to me now and without a specific traumatic event I cannot ascribe her current C5-6 disc findings to a single work related event. In fact, unless there is a history that she is not telling me I cannot describe *569 any particular single event as the cause of her disc protrusion. Many cervical disc protrusions occur insidiously and cannot be attributed to a single isolated traumatic event.... Dr. Haydel's treatment of her neck pain with epidural steroid injections as recommended by Dr. Guidry is appropriate. I did not find evidence of a pre-existing condition contributing to Ms. Authement's symptoms. Please note however that this conclusion is based on Ms. Authement providing me with the history that she had absolutely never hurt her neck in the past or had any prior diagnostic studies of her neck. I do not have any information that would lead me to the conclusion that this disc problem is pre-existing July 05, 2001. In answer to your question regarding maximum medical improvement, it has now been over six months since her "injury" and she says that her symptoms have plateaued, that is she has not made any significant improvement over the last couple of months and has not responded to therapy or epidural steroid injections. I do not feel that surgical treatment is necessary or likely to improve her condition and therefore it is logical to conclude that she is at maximum medical improvement at the current time. She has a permanent impairment related to her C5-6 disc protrusion but in response to your questions regarding whether this impairment is related to the accident of July 05, 2001 I have not seen evidence that a single incident or single injury has caused this disc problem. Her physical restrictions would be primarily regarding her upper extremities and overhead activities. I would not advise her lifting repetitively more than 10 or 15 pounds. I would place her in a light duty capacity and not require her to perform activities that required extremes of cervical spine motion, Sedentary or light work would be well within her qualifications. I would not restrict her traveling and I feel that these restrictions are necessary relative to her C5-6 disc protrusion and these restrictions and opinions are based more heavily on her subjective complaints augmented by the MRI scan findings.
There is no further medical evidence in the record concerning Ms. Authement's injury. However, at the trial of this matter on August 2, 2002, Ms. Authement testified as follows with regard to her current complaints: "My shoulders and my neck hurt sometimes. It depends what I do. If I move my head a lot or if I do any movement, if I move around too much, my arms, I'll hurt." Ms. Authement further indicated that she intends to proceed with the surgery as recommended by Dr. Guidry and Dr. Haydel.
According to the record, Wal-Mart began paying medical benefits and weekly indemnity benefits of $190.76 to Ms. Authement following her injury and continued to pay same through February 14, 2002, when all benefits were terminated. This action by Wal-Mart prompted the instant suit. Ms. Authement's claim for compensation proceeded to hearing on August 2, 2002, at which time the workers' compensation judge heard testimony from Ms. Authement and Ms. Davis, allowed the introduction of various documents into evidence, including the depositions of Dr. Gary Guidry and Peggy Horton and Ms. Authement's medical records, and took the matter under advisement.
After hearing from Ms. Authement and Ms. Davis at trial and considering the evidence in the record, the workers' compensation judge rendered judgment on August 30, 2002, finding that Ms. Authement was injured while in the course and scope of her employment with Wal-Mart and that she was entitled to workers' compensation *570 benefits. Moreover, the judge concluded that Wal-Mart did not reasonably controvert Ms. Authement's claim for benefits and, thus, awarded Ms. Authement $2,000.00 in penalties and $2,000.00 in attorney fees. It is from this judgment that both parties have appealed. In its appeal, Wal-Mart assigned the following specifications of error:
1. The Workers' Compensation Court erred in ruling that the claimant suffered an accident as defined by the Louisiana Workers' Compensation Act.
2. The Workers' Compensation Court erred in finding that the employer was arbitrary and capricious and in its application of LSA-R.S. 23:1201.2 by awarding both penalties in the amount of $2,000.00 as well as attorney's fees in the amount of $2,000.00.
3. The Workers' Compensation Court erred in ruling that Employer/Defendant should pay medical benefits, as the accident was not compensable, and if, in the alternative the incident was compensable, the Workers' Compensation Court erred by not ruling on Defendant/Employer specifically pled right to a medical expense offset as afforded in LSA-R.S. 23:1212.
In her appeal, Ms. Authement assigns error to the workers' compensation judge's failure to award judicial interest. Moreover, Ms. Authement seeks an award of damages for what she claims is the filing of a frivolous appeal and attorney fees for defending same.

STANDARD OF REVIEW
Whether a claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the workers' compensation judge. Williams v. Wal-Mart Stores, Inc., XXXX-XXXX, p. 5 (La.App. 1 Cir. 9/28/01), 809 So.2d 294, 298. Factual findings in a workers' compensation case are subject to the manifest error standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As such, in order for an appellate court to reverse a workers' compensation judge's factual findings, it must find from the record that a reasonable factual basis does not exist for the findings of the workers' compensation judge and that the record establishes that the findings are clearly wrong. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Furthermore, when factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

WORK-RELATED ACCIDENT
In its first assignment of error, Wal-Mart contends the workers' compensation judge erred in finding that Ms. Authement suffered a work-related accident pursuant to La. R.S. 23:1021. Wal-Mart alleges that Ms. Authement neither provided a specific date of her alleged accident, nor identified a specific event that caused her injury. We disagree.
As a threshold requirement, a worker in a compensation action must establish "personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031. The applicable statutory definition of "accident" is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive *571 degeneration." La. R.S. 23:1021(1). The fact that an employee does not notify her employer immediately that she suffered an accident, or does so several days after the date of the alleged injury, does not prohibit a finding that the employee sustained an accident. Haws v. Professional Sewer Rehabilitation, Inc., 98-2846, p. 5 (La.App. 1 Cir. 2/18/00), 763 So.2d 683, 688. Moreover, an employee should not be barred from recovery because she did not realize or diagnose the full extent of her injury immediately after it happened. Haws, 98-2846 at 6, 763 So.2d at 688.
Louisiana courts have consistently interpreted the work-related accident requirement liberally. Bruno v. Harbert International Inc., 593 So.2d 357, 360 (La. 1992). Indeed, it is well-settled in Louisiana that an "accident" exists when "heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition." Id. (citing Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628, 631 (1959)).
The determination of whether an accident occurred is to be construed from the worker's perspective. Notably, however, the claimant's burden of proof is not relaxed, for she must still establish a work-related accident by a preponderance of the evidence. Haws, 98-2846 at 6, 763 So.2d at 688. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Fabre v. ICF Kalser Intern., 2001-2734, p. 5 (La.App. 1 Cir. 11/8/02), 835 So.2d 724, 727. Corroboration of the claimant's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Moreover, barring circumstances that cast suspicion on the reliability of the claimant's uncontradicted testimony, the trial court should accept the testimony as true when determining whether the claimant has discharged his burden. Firmin v. St. Mary Parish School Bd., XXXX-XXXX, p. 4 (La.App. 1 Cir. 4/2/03), 843 So.2d 1144,1146.
After careful review of the record, we find no manifest error in the workers' compensation judge's determination that Ms. Authement's injury was caused by a work-related accident. On July 5, 2001, Ms. Authement reported to her immediate supervisor, Darla, that she was experiencing pain in her shoulders after "doing a lot of lifting." Darla commented to Ms. Authement that it was "probably from down stacking milk." Ms. Authement continued her work at that time and reported to work as usual the following day. However, when the pain worsened, Ms. Authement began working as a cashier to avoid the heavy lifting that was required in the dairy department. Ms. Authement testified she chose not to file an accident report immediately following the incident on July 5, 2001, because she believed she had just pulled some muscles. However, the pain started to radiate into her arms, and she sought medical attention. On July 19, 2001, Ms. Authement filed an accident report indicating that she was injured on July 5, 2001, and that "continuous lifting" was the cause of her injury.
According to the medical records from the various physicians who treated Ms. Authement, she was consistent in her description of how and when she was injured. Ms. Authement maintained throughout that she did not have any problems with her arms and shoulders before the incident on July 5, 2001. Further corroboration of *572 Ms. Authement's testimony concerning the July 5, 2001 incident is found in an internal document from CMI. In a July 20, 2001 entry in the "Notepad History" from Ms. Authement's CMI file, the following was noted: "DOI: 07/05/01 Sp/W Mary in Personnel Date reported: 07/05/01 Reported to: Darala McDonald (dept.mgr.) Acciden into: Contious [sic] lifting and pushing."
Wal-Mart offered no direct evidence to discredit or cast serious doubt upon Ms. Authement's version of how she was injured on July 5, 2001. Wal-Mart simply argues that Ms. Authement "could not identify the cause of her injury without having spoken to Darla who gave her a description of an accident." Nonetheless, the fact remains that Ms. Authement reported pain in her arms and shoulders following what she described as "a lot of lifting" on July 5, 2001. She had no history of prior neck problems. Her condition worsened over a period of days, and an accident report was generated. Ms. Authement sought medical treatment, and Wal-Mart began paying medical benefits and weekly indemnity benefits. Ms. Authement was consistent in her reports to her treating physicians, and Dr. Guidry opined that her disc protrusion was secondary to her job activities. Moreover, we note Ms. Authement's testimony was corroborated by other evidence in the record. Thus, considering the record as a whole, and giving deference to the factual findings of the workers' compensation judge as we are required to do, we will not disturb the judge's finding that Ms. Authement was injured while in the course and scope of her employment with Wal-Mart. This assignment of error is without merit.

AWARD OF PENALTIES
In assignment of error number two, Wal-Mart contends the workers' compensation judge erred in finding it was arbitrary and capricious in its handling of Ms. Authement's claim and in the application of La. R.S. 23:1201.2 by awarding both penalties and attorney fees. Wal-Mart submits it had probable cause to discontinue Ms. Authement's benefits and, thus, was not arbitrary and capricious in the handling of this claim. Moreover, Wal-Mart asserts that if it was arbitrary and capricious in this case, only attorney fees are recoverable under La. R.S. 23:1201.2.
Two statutory provisions, La. R.S. 23:1201(F) and La. R.S. 23:1201.2, provide for the award of penalties and attorney fees in workers' compensation cases. Louisiana Revised Statutes 23:1201 provides, in pertinent part, as follows:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident ....
....
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner: (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that *573 the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Louisiana Revised Statutes 23:1201.2 provides as follows:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
The applicable statutory authority for assessing an insurer with penalties and attorney fees depends on whether the insurer failed to commence the payment of benefits in a timely fashion or discontinued benefits that had been timely paid. Russell v. Snelling Personnel, XXXX-XXXX, p. 5 (La.App. 1 Cir. 5/9/03), 849 So.2d 588, 591. In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, the Louisiana Supreme Court stated that La. R.S. 23:1201.2 applies only when an insurer or employer discontinues payment of benefits; it does not apply when there has been a failure to commence or pay benefits timely. Williams, 98-2271 at 7, 737 So.2d at 45. The distinction drawn in the Williams case is significant because both penalties and attorney fees are recoverable under La. R.S. 23:1201(F), whereas only attorney fees are recoverable under La. R.S. 23:1201.2. Id.
In the instant case, the August 30, 2002 judgment provided for penalties and attorney fees as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Wal-Mart, did not reasonably controvert the worker's compensation claim of Nancy Authement, therefore, the claimant, Nancy Authement, is entitled to penalties in the amount of $2,000.00 as well as attorney fees in the amount of $2,000.00.
We note the workers' compensation judge's use of the phrase "did not reasonably controvert" in this judgment. Similar language is found in La. R.S. 23:1201(F)(2). Although the judge offered no written or oral reasons for judgment, the use of this language implies that La. R.S. 23:1201 was utilized by the judge in his decision to award both penalties and attorney fees against Wal-Mart. However, based on our review of the statutes in question and the cases interpreting same, we conclude the judge committed legal error in applying the wrong statute.
A review of the record reveals that benefits in this case were commenced timely as required by La. R.S. 23:1201. Ms. Authement began receiving medical benefits and weekly indemnity benefits following her injury and continued to receive same through February 14, 2002, when all benefits were terminated. Thus, the only statute at issue in this case is La. R.S. 23:1201.2. That statute has no provision for penalties. See Hundley v. Bisso Properties, 2002-2110, p. 10 (La.App. 1 Cir. 6/27/03), ___ So.2d ___, ___. Accordingly, Wal-Mart's discontinuance of benefits cannot be the grounds for an imposition of a penalty. That portion of the judgment must be reversed.
*574 The next inquiry then becomes whether Wal-Mart acted arbitrarily, capriciously, or without probable cause in discontinuing the payment of benefits to Ms. Authement. Thus, utilizing the provisions of La. R.S. 23:1201.2, we must make our own independent de novo review and assessment of the record and determine whether Wal-Mart's actions herein warrant the imposition of attorney fees pursuant to La. R.S. 23:1201.2. For purposes of La. R.S. 23:1201.2, "[a]rbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstance presented, or of seemingly unfounded motivation." Brown v. Texas-LA Cartage, Inc., 98-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890.
Statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. Thomas v. Wal-Mart, XXXX-XXXX, p. 12 (La.App. 1 Cir. 5/9/03), 849 So.2d 592, 601. The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers. The crucial inquiry is whether the employer has articulable and objective reason for denying or discontinuing benefits at the time it took that action. Williams, 98-2271 at 9, 737 So.2d at 46.
As previously indicated, Wal-Mart began paying medical benefits and weekly indemnity benefits to Ms. Authement following her injury and continued to pay same through February 14, 2002, when all benefits were terminated. According to testimony from Peggy Horton, her decision to terminate Ms. Authement's benefits was based on the accident report filed on July 19, 2001, and on Dr. Sweeney's medical report dated February 7, 2002. Ms. Horton noted, "I based my determination on the first report of injury stating that there was no specific accident." She added, "I felt like the claim should have been denied from the beginning." Ms. Horton admitted that she did not consider the medical reports from Dr. Matherne, Dr. Michael Haydel, or Dr. Guidry in her review of Ms. Authement's file. Moreover, she acknowledged she had no information to suggest that Ms. Authement had sustained any injury to her neck either before or after the July 5, 2001 incident.
After a thorough review of the record herein, we cannot say that Wal-Mart had an articulable and objective reason for discontinuing Ms. Authement's benefits. Wal-Mart paid medical and indemnity benefits to Ms. Authement for approximately eight months before discontinuing same. Wal-Mart was aware of Ms. Authement's diagnosis as well as her treating physician's recommendation for surgery. Based on the information known to Wal-Mart concerning Ms. Authement's medical status, there was no reasonable basis for Wal-Mart's discontinuance of her benefits, thus warranting the imposition of attorney fees pursuant to La. R.S. 23:1201.2. Accordingly, the award of $2,000.00 for attorney fees under these circumstances is affirmed.

MEDICAL EXPENSE OFFSET
In its final assignment of error, Wal-Mart contends the workers' compensation judge erred in failing to rule on whether Wal-Mart was entitled to the medical expense offset pursuant to La. R.S. 23:1212. Wal-Mart asserts that it specifically pled the entitlement to the medical expense offset and was thus, entitled to same. We disagree.
It is well settled that an employer is entitled to a credit against medical expenses pursuant to La. R.S. 23:1212, which states, in pertinent part, as follows: *575 [P]ayment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses,... If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
However, La. R.S. 23:1212 is not a self-operative provision. In order for an employer or insurer to avail himself of the credit for payment, it must set forth the extinguishment of the claim as an affirmative defense and submit evidence at trial showing payment of a certain amount of the employee's medical expenses by a person or entity other than the employee or a relative or friend of the employee, thereby proving the amount of the credit. Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1 Cir. 11/9/95), 665 So.2d 422, 430. Our review of the instant record reveals no such evidence was introduced by Wal-Mart. Thus, Wal-Mart is not entitled to a medical expense credit or setoff pursuant to La. R.S. 23:1212. This assignment of error is without merit.

JUDICIAL INTEREST
In her appeal, Ms. Authement assigns error to the judge's failure to award judicial interest below. Pursuant to La. R.S. 23:1201.3(A), "[a]ny compensation awarded and all payments thereof directed to be made by order of the workers' compensation judge shall bear judicial interest from the date compensation was due until the date of satisfaction." Thus, an award of legal interest is not discretionary with the workers' compensation judge. Gregory v. Interim Personnel Of North Louisiana, 30,808, p. 3 (La.App. 2 Cir. 8/25/98), 717 So.2d 291, 293. A workers' compensation claimant is entitled to legal interest on past workers' compensation benefits from the due date of each payment, until paid, and on penalties and attorney fees from the date of judicial demand until paid. Kirn v. East Jefferson Hospital, 96-0838, p. 12 (La.App. 1 Cir. 2/14/97), 691 So.2d 127, 134. Accordingly, the judgment below is amended to provide for same.

DAMAGES AND ATTORNEY FEES FOR FRIVOLOUS APPEAL
Ms. Authement argues on appeal that Wal-Mart's appeal was frivolous and as such, she is entitled to damages. She further requests an additional award of attorney fees for defending the appeal. However, Wal-Mart obtained relief on appeal in that the part of the judgment awarding statutory penalties is reversed. Thus, Wal-Mart's appeal was not frivolous. Ms. Authement is not entitled to damages or additional attorney fees on appeal. See Insurance Company of North America v. Labit, 99-2448, p. 7 (La.App. 1 Cir. 11/15/00), 772 So.2d 385, 389.

CONCLUSION
For the above and foregoing reasons, the portion of the workers' compensation judgment awarding $2,000.00 in penalties is reversed. Moreover, the judgment is amended to grant legal interest on past workers' compensation benefits from the due date of each payment, until paid, and on the attorney fees awarded below from the date of judicial demand until paid. All costs associated with this appeal are assessed equally between the parties.
*576 REVERSED IN PART. AMENDED, AND AS AMENDED, AFFIRMED.