HUGHES, J.
| ¿This ⅛ an appeal from an Office of Workers’ Compensation (OWC) ruling granting workers’ compensation benefits to a claimant following termination of benefits by the employer under LSA-R.S. 23:1208. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On November 18, 2004 Percy Aucoin filed a “Disputed Claim for Compensation” with the OWC, alleging that on or about May 21, 2004, he bumped his head on a pipe while climbing a scaffold during the course and scope of his employment with his employer, Cajun Constructors, Inc. (Cajun). Mr. Aucoin claims that this incident caused him to suffer a neck injury, which rendered him disabled. Workers’ compensation benefits were paid to Mr. Aucoin by the employer’s insurer, St. Paul Mercury Insurance Company (St. Paul),[1] through November 3, 2004. At that time, the decision was made by St. Paul to ter-mínate benefits because it believed that Mr. Aucoin had made fraudulent misrepresentations in violation of LSA-23:1208.
Following a hearing before the OWC, the OWC judge ruled that Mr. Aucoin had suffered a compensable injury, which entitled him to supplemental earnings benefits “commencing from November 3, 2004 through February 2, 2006, for 65 weeks, amounting to $27,885.00, with interest at the rate of 5.25% per annum on each installment due, until paid, with said benefits continuing under the act.”
IsSt. Paul appeals and makes the following assignments of error:
I. The [OWC] erred in finding that Percy Aucoin carried his burden of proving an un-witnessed accident where the record establishes that Aucoin cannot point to the date of the accident and his witnesses, his own relatives, discredit his testimony regarding the occurrence of an accident.
II. The OWC erred in finding that Percy Aucoin did not violate LSA-R.S. 23:1208.
LAW AND ANALYSIS
The Workers’ Compensation Act provides coverage to an employee for personal injury by “accident” arising out of and in the course of his employment. An “accident” is defined by LSA-R.S. 23:1021(1) as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.”
*1178 An employee must prove the chain of causation required by the workers’ compensation statutory scheme as adopted by the legislature. He must establish that the accident was employment-related, the accident caused the injury, and that the injury caused the disability. Clausen v. D.A.G.G. Const. (La.App. 1 Cir. 2/15/02), 807 So.2d 1199, 1201, writ denied, 2002-0824 (La.5/24/02), 816 So.2d 851. A claimant has the burden of proving disability by clear and convincing evidence. See Walker v. High Tech Refractory Services, Inc., 2003-1621, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.
In this case, Cajun and St. Paul assert on appeal that Mr. Aucoin failed to bear his burden of establishing that there was an accident. Appellants point to uncertainties as to the exact date of the accident, 1.e., at times the accident was reported as occurring on Wednesday, May 19, 2004, and at | ¿times the date of accident was fixed as Friday, May 21, 2004. Appellants further emphasize discrepancies between the testimony of Mr. Aucoin and that of witnesses called on his behalf.
Mr. Aucoin testified that his accident was witnessed by his co-worker, Jamie Blanchard, who also hit his head on the pipe at issue, but that they both continued to work and did not report the accidents. Mr. Aucoin also testified that he saw his son, Percy Aucoin, Jr., who also worked there, and his son-in-law, Curtis Ourso, who was his immediate supervisor on the job site, later that work day and mentioned to them that he had hit his head on the pipe. . Mr. Aucoin testified that he was unsure whether the accident happened on Wednesday (May 19, 2004) or Friday (May 21, 2004). Over the following weekend, Mr. Aucoin stated that he saw Curtis Our-so at a family gathering and told him that his neck was hurting. On his next work day, a Monday, Mr. Aucoin testified that he made a formal report of his injury.
Mr. Aucoin indicated that he had previously undergone a cervical fusion in 1993, but testified that since that time he had only minor neck pain, which did not require medical attention.[2] In contrast, after hitting his head on the Cajun work site, Mr. Aucoin had “strong pain” in a different area of his neck, which radiated down his arms.
Cajun asserts that the testimony of Curtis Ourso contradicts that of Mr. Aucoin, and that since Cajun records show Mr. Aucoin’s son did not work on Friday, May 21, 2004, he could not have been informed by Mr. Aucoin of the accident on the day it allegedly happened. However, the testimony of both these witnesses is equivocal.
|sCurtis Ourso indicated that he did not recall Mr. Aucoin telling him about the accident or showing him the scaffold on the day that it happened, but Mr. Ourso could not definitively state that Mr. Aucoin did not tell him that day. Mr. Ourso testified that he remembered being told over the weekend by Mr. Aucoin that his neck was hurting, but he did not recall Mr. Aucoin telling him that his neck pain was caused by a work injury until the following Monday. Mr. Ourso testified that he believed Mr. Aucoin was injured as he alleged. Mr. Ourso further confirmed that Jamie Blanchard told him that he had also hit his head on the same pipe, but Mr. Blanchard did not see Mr. Aucoin hit his head.
Mr. Aucoin’s son testified that his father told him about the accident on the day that it happened, during the work day. Percy *1179 Aucoin, Jr. testified that he thought the day of the accident was a Friday, but when told by counsel that Cajun records showed he did not work on the Friday at issue, Percy indicated he was unsure of the exact date and that it could have been Wednesday or Thursday.
Brent Richard testified that he was the site superintendent in May of 2004, and that Mr. Aucoin’s accident was reported to him on the Tuesday after it occurred. Mr. Richard inspected the scaffolding at issue and testified that it was in a “very congested area” and that there was a pipe eighteen to twenty inches from the scaffolding. During his investigation of the accident, Mr. Richard interviewed Jamie Blanchard, who initially gave a written statement saying he saw Mr. Aucoin hit his head, but later indicated he did not actually see the accident. Mr. Blanchard also told Mr. Richard that he had hit his own head on the pipe as well. Mr. Richard also confirmed that Percy Aucoin, Jr. did not work on Friday, May 21, 2004.
1 r,Troy Lake testified that he was the company’s safety director at the time of the accident. He knew Mr. Aucoin and found him to be honest and reputable. Mr. Lake believed that Mr. Aucoin was truthful about the occurrence of the accident. Mr. Lake further testified that he trained the employees to report accidents immediately, but acknowledged that it sometimes happened that accident reports were made days after an accident had actually occurred.
In ruling in favor of Mr. Aucoin, the trial court gave the following oral reasons for judgment:
The first issue is whether or not the court finds that Mr. Aucoin sustained an accident or injury in the course and scope of his employment. The court is of the opinion that he did. I don’t think anybody is exactly sure on which day, whether it was Wednesday, the 19th, or whether it was Friday, the 21st, but after looking through all of the evidence— all of the documentary evidence as well as going back through the testimony— I am convinced that he did, indeed, sustain an accident on the job in that week.
There is plenty of confusion in the case. There is plenty of confusion on Mr. Aucoin’s part, but I have found plenty of confusion to go around. I have found confusion in Dr. Roundtree’s notes versus the written report. I have found confusion with Dr. Isaza. I have found confusion with Mr. Richard. I have found some confusion with Mr. Ourso and plenty of confusion with Ms. [Matthews] on what they say things say that they don’t apparently seem to say and with regard to different timings of things. After looking through everything, I am convinced of the fact that he sustained an accident and I found Mr. Aucoin to be highly credible.
I never saw the deposition of Mr. Aucoin to compare it to what I heard today, but one of the biggest telling things— and I assume the reason I didn’t see Mr. Aucoin’s deposition, is because he didn’t change his testimony between today and when he gave it. Apparently had Mr. Aucoin never mentioned in discovery or in depositions that he ever had any pain prior to this accident, nobody would ever have known that. Obviously in his deposition or in his discovery, he mentioned that he did have some pain because in the first statement— it’s true that he said he did not have any problems. [Ms. Matthews] asked him about soreness, but she asked several more questions and he said, I didn’t have any problems; I was working. It’s my appreciation that he was *1180 zeroing in on it being something major; something that would require treatment.
|7When asked by Dr. Isaza, did you have any problems before, it was, no. He was pretty much asymptomatic before. Now that is not a word that would come from a sixth grader, asymptomatic. That is a word that Dr. Isaza is using, so obviously he asked questions that led him to believe Mr. Aucoin was totally asymptomatic or at least asymptomatic in general. Whether he asked him — - for anybody to think that anybody that sustained a fusion would not have an occasional headache or occasional neck pain I think begs the question. You would expect that. What you’re looking for is anything of any magnitude that would take treatment. He never was treated by any doctors in this interim. He never, as far as we can— there’s no evidence that he ever missed any work because of any pain in his neck area. The fact that he did not apprise them of having occasional pain I don’t find to be of any great magnitude.
Dr. Isaza, in his deposition, did not say that if he had pain before that it would not be related. He did not say that. What he said— it’s on page 27 of his deposition, “If he was having symptoms all along, then I would say, well, you know, when did the symptoms start and how bad were they; if he was aggravated or whether the pain was escalating; how much was the aggravation? All that would need to be answered.” So he did not say that if he had pain before and he didn’t have it after that that would not make it related. What he said was that he would have needed to ask more questions and find out whether it would have been aggravation. We all know that under the [Peveto] standard,[3] it’s a given, that if you are more disabled after an injury than you were before, then it’s compensable.
Also, I have in Dr. Isaza’s records that apparently he’s a little bit confused. He puts in his report of 6-18 that Mr. Aucoin gave him an injury date of 5 — 19— 04 and that he hit his head on a pipe and fell, but when you look at his notes on 6-18, that’s not the history that Mr. Au-coin gave. The history that Mr. Aucoin gave was that he was climbing a ladder and hit his head on a pipe. That’s the history that Mr. Aucoin gave. Like I said, there’s plenty of confusion to go around.
Dr. Roundtree— I have to say that I never saw a written report from Dr. Roundtree. It is not in his records. All that’s in his records are his handwritten notes, but I have to assume, based upon everything I read from Ms. [Matthews], that she received some kind of written report that said Mr. Aucoin told him that he had been having neck pain for approximately six weeks before the accident. There’s got to be some confusion here because I looked at every written note looking for anything and I will admit that it is very hard to read, but I really felt like I was able to finagle most of it out and nowhere in there is there any notion of even a six, six weeks or anything that looked like it could even remotely go there.
Also, although Ms. [Matthews] said that Dr. Roundtree’s report told her that his pain was due to arthritis and not related |sto the accident, his HICFA form of 5-26-04 says that his injury is related to the employment. Also, Dr. Roundtree diagnoses him on 6-1-04 as having arthritis, in parentheses, neck trauma involved. Dr. Roundtree is put *1181 ting a relationship between the accident and his injury.
Ms. [Matthews] also is a little bit confused. Once again, she admitted that she never talked to Dr. Roundtree personally, so everything was from his written reports and that she just scanned his notes; that they were too difficult to read. ' She admitted that she never talked to Brent and on page 38, that she said Curtis told her that the tag did not say, no overhead obstruction. I specifically asked Mr. Ourso if he even looked at the tag and he said he never even went up there to look at the tag. She’s saying that he did look at the ’ tag and the tag said, “No overhead obstruction” on it.
She’s reading verbatim in her deposition from the report of Dr. Roundtree, which I have to accept because I don’t have the report. She says that it read, “Patient said that he had neck pain about six weeks prior to injury.” If, indeed, he actually said that, although I could not find it anywhere in Dr. Round-tree’s records, it’s her interpretation that he means “for six weeks,” when it could be as easily that he had neck pain one time six weeks before the injury.
Like I said, there’s plenty of confusion to go around. I find that everybody was in agreement on. what the situation was; the scaffolding, the ladder, the pipe. Whether it was tagged or untagged— other than the fact that some say it was and some say it wasn’t at different times— it’s of no consequence for workers’ compensation; even if he saw that there was an obstruction and hit his head, it’s still compensable. Everyone indicated, except for Mr. Richard— now he kind of eluded [sic] to how things have developed now— that they all felt that Mr. Aucoin had injured himself that day on that job.
... [Everybody differs a little in terms of Jamie Blanchard and we don’t have him here to tell us what happened. I’ve got Mr- Richard telling me that [Jamie Blanchard] signed a statement that said he saw it and that Mr. Richard tore it up because he recanted the statement. All right. We have Mr. Ourso, who apparently got the statement from Mr. Blanchard and gave it to Mr. Richard, but he also says that Mr. Blanchard told him that he was told, but that he didn’t see it, but then he turned in a written statement that has this on it. I believe that both the gentlemen probably struck their heads. Luckily, only Mr. Aucoin has sustained a disability as a result of it. There is more than enough evidence to support his version of how the accident occurred.
The reporting situation between him and Mr. Ourso— I think there’s some confusion on both sides as well. I think there’s even some more confusion on the part of Mr. Richard, who apparently signed off on the report that was made in this matter, the notice of incident report. His signature is dated the day before he ever even knew about the accident. The incident report is filled out and signed by what appears to be Brent |flRichard on 5-24-04, which is the Monday before he said he even knew what happened.
Nobody is perfect in this situation on either side, but once I take everything into consideration and once again, I found Mr. Aucoin to be very credible. Actually I found everybody to [be] very credible. I think this is one of those situations where nobody remembers the facts exactly as they actually happened.
[[Image here]]
As to the nature and extent of his disability, the court finds that Mr. Au-coin’s preexisting condition was aggra *1182 vated by this accident and that his present disability is directly related to the accident. He was symptomatic before, but he was much more symptomatic after; and he was not disabled before and now he is disabled after. The court finds that the nature of the disability is borne out by the accident as an aggravation of a preexisting condition under the [.Peveto] standard.
The court finds that he is in the supplemental earnings benefits category as he as recently as the deposition of Dr. Isaza— Dr. Isaza was asked at that time, “Do you feel he can still do light duty work?” and he said, ‘Tes.” We don’t have anything after that, so we go with that. He’s at light duty and supplemental earnings benefits are owed from 11-3-04 to date.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 696 So.2d 551, 556 (La.1997). See also Anderson v. Eckerd Corp., 2005-1381, p. 4 (La.App. 1 Cir. 6/21/06), 939 So.2d 386, 388, writ denied, 2006-1849 (La.10/27/06), 939 So.2d 1283.
|-i (Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers’ compensation judge. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone that bear so heavily on the listener’s understanding and belief in what is said. Authement v. Wal-Mart, 2002-2434, p. 6 (La.App. 1 Cir. 9/26/03), 857 So.2d 564, 570.
The fact that an employee does not notify his employer immediately that he suffered an accident, or does so several days after the date of the alleged injury, does not prohibit a finding that the employee sustained an accident. Moreover, an employee should not be barred from recovery because he did not realize or diagnose the full extent of his injury immediately after it happened. Authement v. Wal-Mart, 2002-2434 at p. 7, 857 So.2d at 571.
The determination of whether an accident occurred is to be construed from the worker’s perspective. Notably, however, the claimant’s burden of proof is not relaxed, for he must still establish a work-related accident by a preponderance of the evidence. A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Corroboration of the claimant’s testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Moreover, barring circumstances that cast suspicion on the reliability of the claimant’s uncontradicted tes *1183 timony, the trial court should accept the testimony as true l^when determining whether the claimant has discharged his burden. Authement v. Wal-Mart, 2002-2434 at pp. 7-8, 857 So.2d at 571.
After a thorough review of the record presented in this case on appeal, we are unable to say that the OWC judge committed manifest error in finding that the claimant suffered an injury as alleged. This case turned on the credibility of the claimant, who the OWC found to be truthful. Although there were some minor discrepancies among the claimant’s witnesses regarding certain facts about the accident, the OWC judge did not find them significant or sufficient to cast doubt on the claimant’s credibility.
Cajun and St. Paul further argue on appeal that Mr. Aucoin violated LSA-R.S. 23:1208, which proscribes willful false statements or representations made to either obtain or defeat the payment of workers’ compensation benefits, under penalty of fine and/or restitution and/or forfeiture of benefits. The OWC judge rejected these assertions and did not find that Mr. Aucoin had made any willful false statements or representations in this case. We likewise find no error in this ruling.
CONCLUSION
For the reasons assigned, the judgment of the Office of Workers’ Compensation is affirmed. All costs of this appeal are to be borne by defendants/appellants, Cajun Constructors, Inc. and St. Paul Mercury Insurance Company.
AFFIRMED.

. Although St. Paul was named in the claimant’s petition and did file a waiver of citation and acceptance of service with the OWC, the Traveler’s Insurance Company joined with Cajun in the answer to the action. Further, the adjuster in the case, Joyce Matthews, referred to the insurer as “St. Paul Travelers.” However, since only St. Paul filed a motion for appeal, we will refer herein only to the appellant, St. Paul.

. This surgery was disclosed to Cajun at the time Mr. Aucoin began his employment with the company.

. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689.