873 So.2d 664 (2004)
Judith A. SCOTT
v.
WAL-MART STORES, INC. and Claims Management, Inc.
No. 2003 CA 0858.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*666 Timothy S. Marcel, Luling, Counsel for Plaintiff/Appellee/Second Appellant Judith A. Scott.
Frank A. Flynn, Lafayette, Counsel for Defendant/Appellant/Second Appellee Wal-Mart Stores, Inc.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
GUIDRY, J.
By this appeal, an employer seeks review of judgments in favor of a claimant finding her temporarily, totally disabled and awarding past and present benefits, penalties, and attorney fees. The claimant answered the appeal seeking an increase in her award of penalties and attorney fees.

FACTS AND PROCEDURAL HISTORY
On the night of October 10, 2000, while engaged in the course and scope of her employment as a customer service representative at Wal-Mart Stores, Inc. (Wal-Mart), the claimant, Judith A. Scott, fell after tripping over the corner of a pallet jack in the claims department of the store. At the time of her accident, Mrs. Scott was carrying an armful of folded boxes. She immediately reported the accident to her supervisor and was examined by a company physician, Michael L. Watkins, the following day. Mrs. Scott initially complained of injury to her elbows and her right knee as a result of the fall. Dr. Watkins diagnosed Mrs. Scott as having suffered a patella contusion to the right *667 knee and released her to return to work with the restriction that she be allowed to remain sitting, only walking or standing to get something to eat or to go to the restroom. Mrs. Scott, however, chose not to return to work, but instead used her vacation time to stay off work until her next appointment with Dr. Watkins. Dr. Watkins performed a follow-up examination of Mrs. Scott on October 18, 2000, at which time he again released her to return to work but with no restrictions. Because she was still experiencing significant pain in her right knee, Mrs. Scott requested and was granted permission to seek consultation with an orthopedic specialist of her choice.
The orthopedist of her choice, Dr. Gary Guidry, first saw Mrs. Scott on November 17, 2000, for the pain associated with the injury to her right knee. After ordering an MRI of her right knee, Dr. Guidry diagnosed Mrs. Scott with chondromalacia,[1] but found she could continue working. Mrs. Scott continued to treat with Dr. Guidry through January 4, 2001, at which time he released her from his care. Several months later in May 2001, Mrs. Scott returned to Dr. Guidry complaining of a bump in the patella of her right knee. Dr. Guidry found that the knee was inflamed[2] and related the diagnosis to Mrs. Scott's workplace accident on October 10, 2000. Less than a month later Mrs. Scott returned to Dr. Guidry complaining of "pain referring down into her right leg." Based on this complaint, Dr. Guidry suspected an injury to the lumbar spine and ordered an MRI of Mrs. Scott's back, which revealed "L2-L3 disc protrusion of significant degree causing some canal stenosis." Thereafter, Dr. Guidry began to treat Mrs. Scott for injury to her lumbar spine but authorized her to continue working until October 11, 2001, at which time he recommended that she stop working because of the epidural steroid injections she was receiving to treat her back pain. Mrs. Scott, however, was not working at the time Dr. Guidry recommended that she not return to work and had not worked at Wal-Mart since September 24, 2001.
On November 5, 2001, a claims adjuster for Claims Management Inc. (CMI), the company that administered workers' compensation claims for Wal-Mart, notified Mrs. Scott that it would stop paying her workers' compensation benefits as of that date because of a discrepancy in a doctor's note she had submitted. Mrs. Scott filed a disputed claim for compensation on November 19, 2001, seeking wage benefits and medical treatment and disputing Wal-Mart's assertion that she had violated La. R.S. 23:1208 and thereby forfeited her right to further compensation benefits. Named as defendants in the disputed claim were Wal-Mart Stores, Inc. and CMI. Wal-Mart and CMI answered Mrs. Scott's disputed claim, denying the status and causation of Mrs. Scott's injuries and averring that Mrs. Scott forfeited entitlement to any additional compensation benefits based on her alleged violation of La. R.S. 23:1208.
*668 At the conclusion of the trial of this matter, the workers' compensation judge (WCJ) ordered both sides to submit post-trial briefs. Subsequently, the WCJ issued a signed judgment in favor of Mrs. Scott, in which he found Mrs. Scott: (1) entitled to temporary total disability benefits from the date of termination to date; (2) entitled to medical benefits; and (3) had not violated La. R.S. 23:1208. The WCJ further found that Wal-Mart arbitrarily and capriciously handled Mrs. Scott's claim and ordered it to pay $2,000 in penalties and an additional $2,000 in attorney fees.
Wal-Mart and Mrs. Scott filed motions for new trial. The WCJ denied Wal-Mart's motion and granted Mrs. Scott's motion for a new trial on the issue of the amount of attorney fees awarded. Following the new trial, the WCJ rendered judgment increasing Mrs. Scott's attorney fees award from $2,000 to $10,000 and awarding her the costs of the transcription of all depositions and medical records. Wal-Mart suspensively appealed the underlying judgments, and Mrs. Scott answered the appeal seeking an increase in the amount of penalties assessed against Wal-Mart and additional attorney fees relative to the pending appeal.

ASSIGNMENTS OF ERROR
By this appeal, Wal-Mart contends that the WCJ committed the following errors in the judgments rendered:

Assignment of Error I/Issue I
The trial court committed manifest error when the court found plaintiff, Judith Scott, was entitled to workers' compensation benefits when the plaintiff failed to carry the requisite burden of proof regarding the crucial medical connexity of the work accident and her low back condition.

Assignment of Error II/Issue II
The trial court committed manifest error when it failed to give reasonable consideration to the court appointed IME's findings on the crucial medical causation issue.

Assignment of Error III/Issue III
The trial court committed manifest error when the court found plaintiff, Judith Scott, was entitled to temporary total disability benefits.

Assignment of Error IV/Issue IV
The trial court committed manifest error 1) when it found Wal-Mart had not reasonably contraverted the claim for indemnity benefits and medical benefits and awarded penalties and 2) when it found Wal-Mart was arbitrary and capricious and awarded attorney's fees, when there were substantial and legitimate disputes over the extent of work related injury and/or work related disability.

Assignment of Error V/Issue V
The trial court committed manifest error when it failed to find the plaintiff/appellee did not (sic) commit a violation of La. R.S. 23:1208 when plaintiff presented an alteration of doctor's return to work slip to workers' compensation adjuster.

DISCUSSION
It is a well-settled principle that the provisions of the workers' compensation scheme should be liberally interpreted in favor of the worker. Bynum v. Capital City Press, Inc., 95-1395, pp. 5-6 (La.7/2/96), 676 So.2d 582, 586. In a workers' compensation case, the claimant bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance *669 of the evidence. Quinones v. U.S. Fidelity and Guarantee Company, 93-1648, p. 6 (La.1/14/94), 630 So.2d 1303, 1306-1307.
The factual findings in a workers' compensation case are subject to the manifest error standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Whether a claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the workers' compensation judge. Authement v. Wal-Mart, 02-2434, p. 6 (La.App. 1st Cir.9/26/03), 857 So.2d 564, 570. As such, in order for an appellate court to reverse a workers' compensation judge's factual findings, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong. Lyons v. Terrebonne Parish School Board, 03-0325, p. 2 (La.App. 1st Cir. 12/31/03), 868 So.2d 739, 740.
Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Williams v. Wal-Mart Stores, Inc., 00-1347, p. 4 (La.App. 1st Cir.9/28/01), 809 So.2d 294, 298.
With these principles of appellate review clearly in focus, we begin our discussion with Wal-Mart's second assignment of error because its determination bears heavily on our resolution of assignments of error one and three. In their second assignment of error, Wal-Mart asserts that the WCJ committed manifest error in not giving greater weight to the opinion of the independent medical expert (IME).
As a general rule, the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. However, the treating physician's testimony is not irrebuttable, and the trier of fact is required to weigh the testimony of all medical witnesses. Mosley v. Pennzoil Quaker State, 37,199, pp. 3 (La.App. 2nd Cir.7/23/03), 850 So.2d 1100, 1103, writ denied, 03-2412 (La.11/21/03), 860 So.2d 553. Still, La. R.S. 23:1123, which provides for the appointment of an IME when there is a conflict in the medical evidence, states that the report of the IME shall be prima facie evidence of the facts therein stated. This prima facie presumption should not require a greater amount of evidence to refute than any other prima facie presumption, but a mere contrary opinion is not alone sufficient to overturn it. Carlock v. Gross, 200 So.2d 353, 359 (La.App. 4th Cir.), writ refused, 251 La. 60, 202 So.2d 662 (1967). An IME's medical conclusions should be given significant weight because the IME is an objective party. Nevertheless, the opinion of the IME is not conclusive, and the WCJ must evaluate all of the evidence presented in making a decision as to a claimant's medical condition. Mosley, 37,199 at 4-5, 850 So.2d at 1103.
Based on the evidence in the record before us, it is clear that the WCJ credited the testimony and opinion of Dr. Guidry over that of the employer's choice of orthopedist, Dr. Christopher Cenac, and the court-appointed IME, Dr. Jeffrey Fitter. Drs. Cenac and Fitter opined that Mrs. Scott's back pain was not causally related to her workplace accident, that she had reached maximum medical improvement, *670 and that she was able to return to her former employment with no restrictions.
Drs. Cenac and Fitter both seemed to place emphasis on the fact that none of the doctors treating Mrs. Scott relative to her workplace injury noted any complaints by Mrs. Scott of pain in her right leg, hip, or any radiating pain. However, as pointed out at trial, at her initial visit to Dr. Guidry on November 17, 2000, Mrs. Scott wrote on her medical questionnaire that she was seeing the doctor for pain in her right knee and leg. Further, Mrs. Scott testified that she had told both Drs. Guidry and Watkins that she had pain in her right thigh and hip following the accident. Finally, in the computer diary notes of the adjuster for CMI who handled Mrs. Scott's case, it is noted that as early as October 24, 2000, Mrs. Scott had described her complaints to the adjuster as: "pulling feeling when she stands on it for any length of time. This is the right knee and the pull goes down and up the leg." It is also documented in the adjuster's notes that Mrs. Scott complained of her right leg locking and not bending.
Thus, considering the evidence in the record before us as a whole and the constraints of our standard of review, we reject Wal-Mart's contention that the WCJ erred in its decision not to give greater weight to the findings of the IME. The WCJ made a credibility determination, which cannot be reversed on appeal absent manifest error. Having found evidence in the record before us to support the WCJ's determination, we find that his determination was not manifestly erroneous.
We now turn to Wal-Mart's assignments of error one and three. Therein, Wal-Mart disputes the WCJ's finding that Mrs. Scott's injury is compensable as stemming from her work-related accident and that her back pain was related to her knee injury. We review these contentions in light of our determination of assignment of error number two.
The medical evidence in the record shows that Dr. Guidry opined that the L2-L3 level disc protrusion was casually related to Mrs. Scott's workplace accident on October 10, 2000. In his deposition, Dr. Guidry acknowledged that Mrs. Scott had not made any complaints of radiating pain, back pain or pain anywhere other than her knee until more than six months after the accident. Mrs. Scott testified that she had complained to Dr. Guidry of a pulling sensation from her right knee up through her thigh and hip into her lower back, which was not fully documented by Dr. Guidry. She also testified that she complained of pain in her right hip and thigh to Dr. Watkins. Dr. Guidry believed that the pain in her right leg "could have masked symptoms that were related to a back problem." He further stated that because the radiating pain Mrs. Scott complained of was in her upper thigh, he would associate that pain with a disc higher than the L4-L5 or L5-S1 levels. Dr. Guidry opined that Mrs. Scott was temporarily, totally disabled from working.
Also at trial, Mrs. Scott acknowledged having fallen to the ground at her son's house in the late spring or early summer of 2001 when her "leg gave way" and she bruised her ribs; but there was some confusion as to the actual date the incident occurred. At trial, Mrs. Scott admitted that in her deposition she testified that the incident occurred between October 10, 2000, and May 1, 2001; however, on the witness stand, she testified that she had researched when the incident occurred and learned from her medical records that the incident occurred on May 27, 2001. She testified that the incident had occurred about three weeks before her June 13, 2001 visit to Dr. Guidry where he first notes her complaint of radiating pain in *671 her right leg. She also stated that she informed Dr. Guidry of the incident but explained that Dr. Guidry did not document the incident in his medical notes because she did not "go to him for it." Yet on further questioning by her attorney on redirect, Mrs. Scott stated that she saw Dr. Haydel the day after she had fallen at her son's house, and it was pointed out that Dr. Haydel's records indicated that he saw her on June 28, 2001, regarding her fall. The discrepancies regarding the accident at Mrs. Scott's son's house causes us some concern. However, based on our review of the record in its entirety, especially in light of the appropriate standard of review, we cannot say the WCJ was manifestly erroneous or clearly wrong in finding that Mrs. Scott proved causation and proved her entitlement to temporary, total disability benefits.
We now address Wal-Mart's assignment of error number five regarding the WCJ's failure to find that Mrs. Scott forfeited her right to receive workers' compensation benefits based on the alteration of one of the doctor's notes she submitted to the CMI claims adjuster. At trial, the testimony of the CMI claims adjuster who handled Mrs. Scott's claim, Sue Hendrix-Popanz, was submitted via deposition. In her deposition, Mrs. Popanz testified that Mrs. Scott had contacted her wanting to know why she had not been paid indemnity benefits for the date of October 10, 2001. Mrs. Popanz stated that she informed Mrs. Scott that she had not received a doctor's note for that date. Mrs. Popanz then testified that Mrs. Scott told her that she had turned the doctor's notes into Wal-Mart and had retained a copy for herself, so Mrs. Popanz asked Mrs. Scott to fax her copies of the doctor's notes. On receiving the fax, Mrs. Popanz observed that the doctor's note at issue stated that Mrs. Scott was to remain off of work until October 10, 2001, but detected that the note appeared to be altered. Mrs. Popanz testified that she then contacted Wal-Mart and Dr. Guidry's office requesting copies of the note, on receipt of which she found that the actual date given on the note was October 9, 2001. At Mrs. Popanz's request, Dr. Guidry also submitted a letter to Mrs. Popanz stating that the correct date was October 9, 2001.
At trial, Mrs. Scott testified that she had contacted Mrs. Popanz regarding the payment of benefits owed to her but denied specifically asking for compensation for the date of October 10, 2001. She further testified that at that time, Mrs. Popanz informed her that she had no doctor's notes on file excusing her from work and that Mrs. Popanz asked her to fax her all of the doctor's notes of which she had copies. Mrs. Scott then stated that she had her husband fax the notes to Mrs. Popanz from her nephew's fax machine; however, prior to his doing so, she laid the notes on a table and the note excusing her from work until October 9, 2001, got wet. She testified that she dried the paper, "went over the nine," and then highlighted the date, "and it kind of smeared." She fervently denied writing in the date, October 10, 2001.
The requirements for forfeiture of benefits under La. R.S. 23:1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Jim Walter Homes, Inc. v. Prine, 01-0116, p. 8 (La.App. 1st Cir.2/15/02), 808 So.2d 818, 824. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. Western Sizzlin Steakhouse v. McDuffie, 02-0935, p. 4 (La.App.
*672 1st Cir.3/28/03), 844 So.2d 355, 357, writ denied, 03-1147 (La.6/20/03), 847 So.2d 1236. A false statement, which is inconsequential to the present claim, may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits. Newman v. Richard Price Construction, 02-0995, p. 5 (La. App. 1st Cir.8/8/03), 859 So.2d 136, 141. The issue of whether an employee forfeited her workers' compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Ivy v. V's Holding Company, 02-1927, p. 10 (La.App. 1st Cir.7/2/03), 859 So.2d 22, 30.
Although Mrs. Scott's copy of what she said she sent to Mrs. Popanz and the copy received by Mrs. Popanz differ, it is not clear whether the alteration of the copy received by Mrs. Popanz was actually altered by Mrs. Scott, who, as noted earlier, did not fax the copy. The copy of the doctor's note submitted into evidence by Mrs. Scott clearly supports her testimony of writing over the number "9," is clearly distinguishable as a "9," and has the date highlighted. However, the black and white fax image submitted by Wal-Mart as the faxed copy received by Mrs. Popanz clearly shows the number "10." Based on his ruling, the WCJ evidently found Mrs. Scott's testimony regarding this issue more credible. Based on the record before us, we cannot say that the WCJ erred in its findings regarding the alleged violation of La. R.S. 23:1208. Thus, we reject Wal-Mart's contention that the WCJ erred in finding that Mrs. Scott did not violate La. R.S. 23:1208.
As for Wal-Mart's final assignment of error regarding the assessment of attorney fees and penalties, we find merit in this contention, in part. Attorney fees, but not penalties, are recoverable under La. R.S. 23:1201.2[3] if an employer discontinues payment due and arising under the workers' compensation act and such discontinuance is found to be arbitrary, capricious or without probable cause. Williams v. Rush Masonry, Inc., 98-2271, p. 7 (La.6/29/99), 737 So.2d 41, 45. Thus, the WCJ erred in assessing penalties against Wal-Mart under this provision.
Nevertheless, we reject Wal-Mart's contention that the WCJ erred in assessing it with attorney fees. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. Brown v. Texas-LA Cartage, Inc., 98-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890. Statutes providing for attorney fees are penal in nature and must be strictly construed. Thomas v. Wal-Mart, 02-1356, p. 12 (La. App. 1st Cir.5/9/03), 849 So.2d 592, 601. Whether the discontinuation of benefits warrants the imposition of attorney fees is a factual question that will not be disturbed on review in the absence of manifest error or unless clearly wrong. Augustus v. St. Mary Parish School Board, 95-2498, p. 13 (La.App. 1st Cir.6/28/96), 676 So.2d 1144, 1154.
Mrs. Scott was injured in October 2000. Wal-Mart terminated payment of benefits over a year later based on one off-work slip despite having on file medical information regarding her treatment. At the time of the termination, there was no conflicting medical evidence to justify terminating the benefits on the basis of causation. It was a permissible view, considering the totality of the evidence, for the WCJ to find that the discrepancy in the doctor's note was an *673 insufficient basis to terminate the payment of benefits. See Washington v. Lyons Specialty Company, 96-0263, p. 13 (La. App. 1st Cir.11/8/96), 683 So.2d 367, 376. Accordingly, we cannot say that the WCJ erred in finding that Wal-Mart had no articulable and objective reason to terminate the payment of benefits to Mrs. Scott. We also find no error in the amount of attorney fees awarded.
We now turn to Mrs. Scott's request, in her answer to Wal-Mart's appeal, for additional attorney fees for having to defend this matter on appeal. An increase in attorney fees is appropriate when the defendant appeals, obtains no relief, and the appeal has necessitated additional work for plaintiff's counsel. See Carignan v. Louisiana Compressor Maintenance Company, 02-0180, pp. 9-10 (La. App. 1st Cir.12/30/02), 836 So.2d 476, 483. Having found merit in Wal-Mart's contention regarding the assessment of penalties by the WCJ, we must deny Mrs. Scott's request for additional attorney fees for defending this matter on appeal.

CONCLUSION
Accordingly, we reverse that portion of the WCJ's judgment assessing penalties against Wal-Mart. In all other respects, the judgments are affirmed. All costs of this appeal are assessed to Wal-Mart.
REVERSED IN PART AND AFFIRMED IN PART.
CARTER, J., concurs.
PARRO, J., dissents for the reasons assigned.
PARRO, J., dissenting.
The majority correctly observes that LSA-R.S. 23:1123 provides for the appointment of an independent medical examiner (IME) when there is conflicting medical evidence, and the report of the IME shall be prima fade evidence of the facts stated therein. This prima facie presumption should not require a greater amount of evidence to refute than any other prima facie presumption, but a mere contrary opinion is not alone sufficient to overturn it. Carlock v. Gross, 200 So.2d 353, 359 (La.App. 4th Cir.), writ refused, 251 La. 60, 202 So.2d 662 (1967). An IME's medical opinion, although not conclusive, should be given significant weight because the IME is an objective party. Mosley v. Pennzoil Quaker State, 37,199 (La.App. 2nd Cir.7/23/03), 850 So.2d 1100, 1103, writ denied, 03-2412 (La.11/21/03), 860 So.2d 553.
After reviewing the record in this case, I am not convinced that Mrs. Scott satisfied her burden of overcoming the prima facie case established by the report of the IME. Dr. Guidry's initial diagnosis was chondromalacia, which he described as the wearing away of the undersurface of the kneecap. Despite this diagnosis and the complaints of right knee pain reported by Mrs. Scott one month post-accident, Dr. Guidry opined that Mrs. Scott could continue working. This opinion was in accordance with that of Dr. Watkins who examined her the day after the accident. Dr. Guidry went so far as to release Mrs. Scott from his care on January 4, 2001. It was not until approximately seven months post-accident that Mrs. Scott reported to Dr. Guidry that she was experiencing pain radiating down into her right leg, which led him to suspect an injury to her lumbar spine. A subsequent MRI of Mrs. Scott's back revealed a significant disc protrusion at the L2-3 level.
The IME, like Wal-Mart's choice of orthopedist, opined that Mrs. Scott's back pain was not causally related to her workplace accident, she had reached maximum medical improvement, and she was able to *674 return to her former employment without any restrictions. I feel that Dr. Guidry's contrary opinion as to the causal relationship between the workplace injury and the back pain that manifested more than seven months after the accident was alone insufficient to overturn the prima facie presumption. See Carlock v. Gross, 200 So.2d 353. Furthermore, I do not find that any of the other evidence of record was sufficient to refute the prima facie presumption in this case. Accordingly, I respectfully dissent.
NOTES
[1] Dr. Guidry described chondromalacia as the wearing away of the undersurface of the kneecap. However, according to the Attorney's Illustrated Medical Dictionary, the condition is described as the "softening of an articular cartilage, most commonly seen in the kneecap (patella)." 23 (Supp. Oct. 2003).
[2] Dr. Guidry's findings, as recorded in his May 16, 2001 medical note, actually stated that he found "evidence of instability of inflammation." However, later, while being deposed, Dr. Guidry stated that the reference to "instability" was most likely a typographical error, because he did not recall ever documenting that Mrs. Scott had any instability in her knee.
[3] Louisiana Revised Statutes 23:1201.2 was repealed by 2003 La. Acts, No. 1204 § 2.