WELCH, J.
lain this workers’ compensation dispute, the plaintiff/employee,, Ronnie Wesley, appeals a judgment rendered in favor of the defendant/employer, the Town- of Walker (“Town”),-which.-denied and dismissed his claim for workers’ compensation indemnity benefits, medical .treatment, penalties, and attorney fees. Finding no manifest error in the judgment of the workers’ compensation judge (“WCJ”), we affirm.
FACTUAL AND PROCEDURAL HISTORY
Mr. Wesley was employed by the Town as a sewer treatment mechanic (or waste-water operator) from August of 2005 until September 20, 2011. On February 28, 2011, Mr, Wesley, while in the course and scope of his employment with the Town, was injured as the result of :an accident that occurred when a gate closed and struck Mr. Wesley’s left elbow while he was carrying' a bag Of garbage at a sewer lift station. Shortly after the accident occurred, Mr. Wesley reported the accident to his immediate supervisor, Jamie Ether-idge, who sent him to North Oaks Clinic for medical treatment.[1]
The North Oaks Clinic records from February 28, 2011 reflect that Mr. Wesley-reported his left elbow was hit by a wooden gate and that his left elbow was swollen, tender, and “hot.” The examining physician noted these complaints during the physical exam and his impression was that Mr. Wesley had “olecranon bursitis.”[2] Mr. Wesley was given prescription medication and ice pack treatments.
Approximately, three months later, on May 27, 2011, Mr. Wesley sought medical treatment for his left elbow from Dr. John Thomas, an orthopedic surgeon. | ^According to Mr. Wesley, he did not seek treatment for three months because the physician at North Oaks Clinic told him that his left elbow injury would gradually improve, but when it did not, he sought treatment with Dr. Thomas. Dr. Thomas’s medical records reflect that Mr. Wesley reported that he injured his left elbow while working for the Town on February 28, 2011, when a gate hit his elbow and that he had significant pain and swelling in *3 that elbow, which had not subsided. Dr. Thomas noted that although Mr. Wesley had tried to deal, with his pain conservatively over time, Mr. Wesley’s left elbow was interfering with his work and daily life activities.
From the exam, Dr.-Thomas found that Mr. Wesley had a moderate amount of swelling over the area of the olecranon bursa and that his range of motion was “essentially normal, but painful with extension against resistance.” The X-ray examination of Mr. Wesley’s left elbow demonstrated the presence of a traction spur over the triceps insertion into the olecra-non. Dr. Thomas found that “the spur which is present because this injury was three months ago potentially sustained a fracture as a result of the injury ... although the spur itself at its apparent fracture site has got somewhat of a smoothed off arch,” which confirmed the longstanding existence of the traction spur at that site. Dr. Thomas concluded that Mr. Wesley’s injury would not resolve without surgical intervention, and referred Mr. Wesley to Dr. Mark Field, an orthopedic elbow specialist. Additionally, Dr. Thomas disabled Mr. Wesley from working effective May 25, 2011.
On'June 21, 2011, Dr. Field evaluated Mr. Wesley and noted that he still had pain and swelling in his left elbow, and that it was tender on the “bony spicule of the olecranon tip.” Dr. Field recommended surgery and restricted Mr. Wesley | ¿from lifting anything over five pounds, pushing repetitively, pulling with his arm, or placing any pressure on his elbow.[3]
On July-11, 2011, Mr. Wesley was evaluated by Dr. Joe Morgan, the Town’s choice of orthopedic surgeon.- Dr. Morgan confirmed Dr. Thomas’s finding that Mr. Wesley had a spur on the olecranon, which was old in appearance. Dr. Morgan stated that Mr. Wesley probably suffered traumatic olecranon bursitis as a result of the accident. Dr. Morgan explained that when a person has a spur, the bursa may get irritated (bursitis), and then inflammation may or may not calm down. If the'bursitis does not subside, then the spur may require surgical removal; if it does calm down, then it should be left alone. Dr. Morgan testified that on the date he saw Mr. Wesley, Mr. Wesley had no swelling or tenderness, and therefore, he opined that the'bursitis had gone into remission by the time of his evaluation, and thus, Mr. Wesley did not need surgery. Dr. Morgan further opined that as of the time of the evaluation, Mr. Wesley did not have any injury from the February 28,2011 accident that- restricted him from full-duty work at his usual occupation.
In July 2011, Mr. Wesley filed an application for social security disability benefits for issues relating to his left elbow, heart, left knee, and pelvis.[4] Mr. Wesley’s application was accepted in November 2011, and he currently receives approximately $2,029.00 per month in benefits (although he initially received $1,959.00 per month). *4 Thereafter, Mr. Wesley filed a disputed claim for compensation on August 9, 2011, seeking workers’ compensation wage benefits; J^edical treatment, ie., the surgery recommended by Drs. Thomas and Field[5]; disability status; and penalties, attorney fees, interest and costs.
At the request of the Town, on September 28, 2011, Mr. Wesley underwent an independent medical examination by Dr. Eric George, an orthopedic surgeon selected by the Louisiana Department of Labor. See La. R.S. 23.-1123.[6] On examination, Dr. George found no evidence of an olecra-non bursa or evidence of erythema or infection at the elbow juncture. Dr. George noted that Mr, Wesley’s “reactive symptoms [did] not correlate with the area of [the] bone fragment [ (or spur) ] and that “the small bone fragment since February is somewhat suspicious for symptom magnification.” Dr. George further noted that Mr. Wesley had “some mild lateral epicon-dylitis,” and that a “simple steroid injection [could] alleviate [that] discomfort.” Dr. George opined that Mr. Wesley was not “in need of any surgery in any fashion ... that removing the bone fragment [ (spur) ] in any way [would not] alleviate his symptoms and, in fact, ... would be an unnecessary operation.” Dr. George further stated that he “[did] not see the need for an olecranon bursectomy as there [was] no current olecranon bursa present” and that Mr. Wesley was “able to return to the work environment.”
A trial before the WCJ was held on July 2, 2012. At trial, evidence was offered and the parties stipulated to the following facts: (1) Mr. Wesley’s accident [ (¡occurred on February 28, 2011 in the course of and pursuant to his duties as an employee of the Town; (2) Mr. Wesley’s average weekly wage at the time of the February 28, 2011 accident was $868.48 with a corresponding weekly compensation rate of $578.99; (3) Mr. Wesley worked for the Town after the February 28, 2011 accident until May 25, 2011; (4) Mr. Wesley was terminated by the Town on September 20, 2011 because his Family Medical Leave Act (“FMLA”) expired on September 13, 2011 and he was not physically able to work; (5) no worker’s compensation indemnity benefits have been paid; and (6) the surgery recommended by Mr. Wesley’s treating orthopedic surgeons, Drs. Thomas and Fields, has not been authorized.
At the conclusion of trial, the WCJ took the matter under advisement. On September 13, 2012, the WCJ rendered and signed judgment finding: Mr. Wesley failed to prove that the left elbow surgery recommended by his treating physician was reasonable and medically necessary as a result of the February 28, 2011 accident; neither penalties nor attorney fees were warranted for the Town’s failure to authorize the left elbow surgery; Mr. Wesley *5 failed to prove that the accident had a causal relation to the injury alleged to his left' elbow; Mr. Wesley was not entitled to any workers’ compensation indemnity' benefits; and neither penalties nor attorney fees were warranted for the Town’s failure to pay indemnity benefits. Therefore, the WCJ dismissed Mr. Wesley’s claim with prejudice. From this judgment, Mr. Wesley appeals.
On appeal, Mr. Wesley asserts that the WCJ erred in finding that he failed to carry his burden of proving that the accident was causally related to his left elbow injury and that his inability to earn 90% of his pre-injury average wage due to his left elbow injury, and as a result, erred in denying his claims for workers’ compensation indemnity benefits, i. e., supplemental earnings benefits (“SEBs”), medical benefits, and penalties and attorney fees.
JjjLAW AND DISCUSSION
In a workers’ compensation case, whether a claimant has carried his burden of proof is a question of fact to be deter: mined by the WCJ. Authement v. Walr-Mart, 2002-2434 (La.App. 1st Cir.9/26/03), 857 So.2d 564, 570. Additionally, whether the refusal to pay benefits warrants the imposition of penalties and attorney fees is likewise a factual question. Crochet v. Barbera Chevy-Chrysler Co., Inc., 2004-1390 (La.App. 1st Cir.6/29/05), 917 So.2d 49, 53. Appellate review of the, factual findings in workers’ compensation cases is governed by the manifest error or clearly wrong standard. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 380.
Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Lizana v. Gulf Coast Pain Institute, 2003-1672 (La.App. 1st Cir.5/14/04), 879 So.2d 763, 765. If the fact finder’s findings are reasonable in-light of the record reviewed in its entirety, the court' of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990). Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobgrt v. State, DOTD, 617 So.2d 880, 883 (La.4/12/93).
The Workers’ Compensation Act (“the Act”) provides coverage to an employee for personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers’ compensation statutory scheme as adopted by the legislature. Harrison v. Baldwin Motors, 2003-2682 (La.App. 1st Cir.11/3/04), 889 So.2d 313, 316, writ denied, 2005-0249 (La.4/1/05), 897 So.2d 609. He must establish that the accident, was work-related, the accident caused the Rinjury, and the injury caused the disability. Id. Medical testimony, albeit significant, is not conclusive as to the issue of causation, which is generally the ultimate fact to be decided by the court after weighing all the evidence. See Haughton v. Fireman’s Fund American Ins., Co., 355 So.2d 927, 928-929 (La.1978).
We have thoroughly reviewed the evidence in the record before and find no manifest error in the trial court’s factual findings in this matter. With regard to Mr. Wesley’s alleged disability status, entitlement to workers’ compensation indemni *6 ty benefits and need for medical treatment (surgery), the record reflects that there were two permissible views of the evidence — the view expressed by Drs. Field and Thomas and the opposing view expressed by Drs. Morgan and George. The WCJ apparently credited the testimony and opinion of Dr. Morgan and the opinion of Dr. George, ie., that Mr. Wesley’s ole-cranon bursitis had resolved itself, that surgical intervention was unnecessary, and that Mr. Wesley could return to work, over the opinion of Mr. Wesley’s treating physicians, Drs. Thomas and Field. ’ ■
Ordinarily, the opinions of Drs. Thomas and Field would be entitled to greater weight than the opinion of Dr. Morgan, the defendant’s choice of physician. See Scott v. Wal-Mart Stores, Inc., 2003-0858 (La. App. 1st Cir.2/23/04), 873 So.2d 664, 669. However, the treating physician’s opinion is not irrebuttable and the trier of fact is required. to weigh the testimony of all medical witnesses. Id. Furthermore, the medical conclusion of Dr. George, an independent medical examiner appointed pursuant to La. R.S. 23:1123, was also entitled to significant weight because he is an objective party. See Scott, 873 So.2d at 669. Nevertheless, the opinion of the, independent medical examiner is not conclusive, and the WCJ must evaluate all of the evidence presented in making a decision as to a workers’ compensation claimant’s medical condition. Id.
InHerein, the record reflects that Drs. Thomas and Field recommended surgery on Mr. Wesley’s elbow to resolve his ole-cranon bursitis; but according to Dr. Morgan, that condition had resolved itself. Dr. Thomas only saw Mr. Wesley once and Dr. Field saw Mr. Wesley twice for Mr. Wesley’s complaints with regard to his left elbow. Notably, following Mr. Wesley’s examinations by Drs. Morgan and George and their subsequent conclusions that there was no longer any evidence of ole-cranon bursitis in Mr. Wesley’s left elbow and that surgery was not necessary, Mr. Wesley did not seek any further treatment or medical opinions from either Drs. Thomas or Field as to whether the surgery was still necessary. Accordingly, the WCJ’s choice between the two permissible views of the evidence was reasonably supported by the record and was not manifestly erroneous or clearly wrong. See Stobart, 617 So.2d at 883.
Lastly, with regard to penalties and attorney ‘fees, as wé have found no manifest error with" regard to the WCJ’s determinations relating to Mr. Wesley’s alleged disability status, entitlement to workers' compensation indemnity benefits and need for medical treatment (surgery), we likewise find no manifest error in the WCJ’s conclusion that an award of penalties and attorney fees was not warranted.
CONCLUSION
For all of the above and foregoing reasons, the September 13, 2012 judgment of the WCJ is affirmed. All costs of this appeal are assessed to the plaintiff, Ronnie Wesley.
AFFIRMED.

. Jamie Etheridge also completed an Employer First Report of Injury/Illness on the date of the accident.

. The olecranon is the part of the ulna (the bone of the forearm on the side opposite to the thumb) the extends beyond the elbow joint. See The Random House Dictionary of the English Language, College Edition, pp. 926 and 1245. Bursitis is the inflammation of a bursa, which is a small sac that contains synovial fluid to facilitate motion between a tendon and a bone. Id. at p. 182.

. According to Dr, Field’s medical records dated June 21, 2011, Mr. Wesley was taking the prescription medication Plavix because of a recent heart stent. Dr.. Field further noted that the surgery, could not be performed until he was taken off of that medication. According to Dr, Field’s June 30, 2011 medical records, Mr. Wesley reported that he could not be taken off of Plavix for at least one year. This was confirmed by a letter to Dr. Field from Mr; Wesley’s cardiologist. Therefore, Dr, Field recommended that the surgery be performed at that time,

. In 1972, Mr. Wesley injured his left knee and fractured his right thigh in a motorcycle accident. In 1983, he fractured his pelvis and re-injured his left knee in a work related accident with another employer.

. We note that at the time Mr, Wesley filed the disputed claim for compensation, he was not eligible for the surgical procedure recommended by Drs. Thomas and Field. See footnote 3, At trial, Mr. Wesley admitted that the surgical procedure had not been cleared by his cardiologist, but he claimed that it "could” be.

. At the pertinent time period herein, La. R.S. 23:1123 provided:
If any dispute arises as to the condition of the employee, capacity to work, or the current medical treatment for the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.