STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-728

TRAVIS P. PRINCE

VERSUS

SUPERIOR ENERGY SERVICES, L.L.C.
AND LIBERTY MUTUAL INSURANCE COMPANY

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, DOCKET NO. 14-00432
ADAM JOHNSON, WORKERS' COMPENSATION JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.

**REVERSED AND RENDERED.**

Bret C. Beyer, Sr.
Hill & Beyer
A Professional Law Corporation
101 La Rue France, Suite 502
Post Office Box 53006
Lafayette, Louisiana 70505-3006
(337) 232-9733
COUNSEL FOR CLAIMANT/APPELLANT:
    Travis P. Prince

**Michael E. Parker**
**Allen & Gooch, A Law Corporation**
**2000 Kaliste Saloom Road, Suite 400**
**Post Office Box 81129**
**Lafayette, Louisiana 70598-1129**
**(337) 291-1350**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Superior Energy Services, L.L.C. and**
    **Liberty Mutual Insurance Company**

**GENOVESE, Judge.**

In this workers' compensation case, Claimant, Tyler Prince, appeals an Office of Workers' Compensation (OWC) judgment in favor of Defendants, Superior Energy Services, LLC (Superior Energy), and its insurer, Liberty Mutual Insurance Company (Liberty Mutual). Finding legal error on the part of the OWC, we reverse the judgment of the OWC and render judgment in favor of Mr. Prince.

### FACTUAL AND PROCEDURAL BACKGROUND

Travis Prince sustained a work-related injury on September 2, 2012, during the course and scope of his employment with Superior Energy. Although the extent of injury is disputed, it is not disputed that on the morning of September 2, 2012, Mr. Prince "was hopping on a wrench to break a connection, when the connection broke unexpectedly, causing jarring to [his] feet and lower back."[1]

Mr. Prince was sent by Superior Energy to G. Gregory Gidman, M.D., for complaints of lower back pain on September 4, 2012. Dr. Gidman ordered a lumbar magnetic resonance imaging scan (MRI) which revealed a "minimal bulging at L4-5 and L5-S1 level with early desiccation at L4-5 and L5-S1." Dr. Gidman diagnosed a lumbar strain, recommended over-the-counter pain and anti-inflammatory medications, and released Mr. Prince to "regular activities at work at a slower work pace." Mr. Prince saw Dr. Gidman twice more—September 10, 2012 and September 25, 2012—complaining of pain, burning, and numbness in his lower back and left leg. At his last office meeting, Mr. Prince informed Dr. Gidman that he had begun treatment with his choice of orthopedic surgeon, James Butler, M.D.

---

[1]This statement is from the "Accident Data" of Mr. Prince's Disputed Claim for Compensation (1008) filed on January 21, 2014.

Mr. Prince sought treatment with Dr. Butler on September 21, 2012, for complaints of lower back pain. Dr. Butler prescribed physical therapy and deemed Mr. Prince unable to return to work. Dr. Butler's medical records indicate that Mr. Prince had a poor response to physical therapy.[2] Dr. Butler continued to treat Mr. Prince for his injuries for several months.[3] On July 26, 2013, Dr. Butler recommended a second lumbar MRI due to Mr. Prince's increased symptoms and negative response to conservative treatments.

Liberty Mutual denied Dr. Butler's request for a second MRI and, instead, requested an independent medical examination (IME). On September 24, 2013, Liberty Mutual's request was granted, and John R. Budden, M.D., was assigned to examine Mr. Prince and render an IME report.

Mr. Prince was examined by Dr. Budden on October 9, 2013. Dr. Budden's IME report summarized his "*Impression & Recommendations*" as follows:

> Mr. Travis Paul Prince is a 35 year old tool assembler complaining of low back pain related to a work-related accident on 9/2/2012. From reviewing the patient's medical records pertaining to this injury, I believe his medical evaluations and treatment to date have been timely and warranted. Additionally, the lumbar MRI scan obtained on 9/4/2012 was of excellent quality[,] and it failed to reveal any pathology to explain the patient's ongoing complaints. From an orthopedic perspective, I do not believe that this gentleman sustained any serious back injury on 9/2/2012. At most, he may have sustained a lumbar strain, which should have resolved over the past 13 months. I do not believe that any further treatment or testing is warranted. I feel that he is presently at [maximum medical improvement (MMI)] and capable of immediately returning to unrestricted work duties.

---

[2]Mr. Prince had physical therapy nineteen times between October 19, 2012, and November 17, 2012.

[3]Dr. Butler's medical records indicate that he saw Mr. Prince seven times between September 21, 2012, and October 18, 2013. Mr. Prince was also seen by Patrick H. Waring, M.D., for pain management. Under Dr. Waring's care, Mr. Prince received a lumbar medial branch nerve block/steroid injection at L3, L4, and L5 levels on July 15, 2013, and a left L5 and S1 transforaminal epidural steroid injection on October 29, 2013.

Relying on Dr. Budden's IME report, Liberty Mutual terminated Mr. Prince's temporary total disability (TTD) indemnity benefits effective October 9, 2013.

Mr. Prince underwent a second MRI on November 15, 2013.[4] It revealed "[m]ild bulging at L4-5 and L5-S1 with mild canal and foraminal stenosis bilaterally at L4-5 which is similar to previous[]" and "[m]ore prominent disc bulging toward the left at L5-S1 with more prominent left proximal foraminal annular tear and mild left foraminal stenosis." According to Dr. Butler's deposition testimony, he saw Mr. Prince on January 6, 2014, to review the results of his second MRI and suggested that Mr. Prince have a discogram; however, Dr. Butler knew the Medical Treatment Schedule (MTS) required that Mr. Prince would first "need to have a psychological evaluation to exclude any underlying psychological issues with regard to his chronic pain or lack of improvement [over time]."

On January 21, 2014, Mr. Prince filed a 1008[5] with the OWC. He alleged that: (1) Liberty Mutual improperly denied a second MRI in July 2013; (2) Liberty Mutual improperly terminated his TTD indemnity benefits in October 2013; and, (3) he was entitled to penalties and attorney fees for Liberty Mutual's denial of a second MRI and termination of his TTD indemnity benefits.

Dr. Butler formally requested authorization for Mr. Prince to undergo a psychological evaluation to determine if he is a candidate for a discogram. On September 2, 2014, Liberty Mutual rejected the request, stating "the claim is being denied as non-compensable/is disputed." Mr. Prince sought review of the denial

---

[4] Mr. Prince's group health insurance paid Envision Imaging for this scan.

[5] This was the third 1008 filed by Mr. Prince since the date of his accident; however, the previous claims are not relevant to the instant appeal.

by filing an appeal (on an LWC-WC-1009 form) as provided in La.R.S. 23:1203.1(J)(1).[6] However, on September 12, 2014, Mr. Prince received notice that his appeal would "not be filed for the following reason(s): The Medical Treatment Guidelines do not address denials based on issues of compensability. (The Form 1010 has marked that the claim is being denied as non-compensable)."

Mr. Prince filed a Supplemental and Amended 1008 on September 16, 2014. He alleged that Liberty Mutual improperly denied a psychological evaluation and that he was entitled to penalties and attorney fees for its denial thereof.

Trial was held on December 14, 2014, on the issues of whether Mr. Prince was entitled to reinstatement of TTD indemnity benefits, reimbursement for the second MRI, a psychological evaluation, penalties, and attorney fees. At the conclusion of trial, the matter was taken under advisement. On March 2, 2015, the workers' compensation judge (WCJ) issued an oral ruling denying Mr. Prince's claims, except for allowing reimbursement for the second MRI. Judgment was signed March 24, 2015, which decreed "that no further indemnity benefits or medical benefits are owed except . . . that Superior Energy . . . and Liberty Mutual . . . [shall] pay the incurred charges of $533.03 for the lumbar MRI performed on

---

[6]Louisiana Revised Statutes 23:1203.1(J)(1) provides:

> After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.

4

November 15, 2013[,] at Envision Imaging of Acadiana, . . . [and] that all claims for penalties and attorney[] fees are [d]enied[.]" Mr. Prince appeals.

## ASSIGNMENTS OF ERROR

Mr. Prince assigns the following errors for our review:

1. [The WCJ] committed legal error in crediting medical opinions in direct contradiction of the [MTS].

2. [The WCJ] failed to follow the [MTS] in refusing to order that Dr. Butler's recommended pre-discography psychological evaluation be authorized.

3. [The WCJ] erred in failing to award penalties and fees for Liberty Mutual's refusal to reimburse the costs of the second MRI.

4. [The WCJ] erred in failing to order the reinstatement of TTD indemnity benefits, and particularly, in so doing, crediting the legally incompetent opinions of Drs. Gidman and Budden, and not even considering the opinion of the treating physician, Dr. Butler.

5. [The WCJ] erred in failing to award penalties and attorney[] fees for Liberty Mutual's false, arbitrary and capricious conduct in refusing to reinstate TTD indemnity benefits after the results of the second MRI.

6. [The WCJ] erred in failing to award penalties and attorney's fees for Liberty Mutual's refusing to authorize the pre-discography psychological evaluation on the purported ground that the claim was "not compensable."

## LAW AND DISCUSSION

We must decide: (1) whether the WCJ erred in refusing to order a psychological evaluation; (2) whether the WCJ erred in failing to reinstate TTD indemnity benefits; (3) whether the WCJ erred in failing to penalize Liberty Mutual for: termination of TTD indemnity benefits; failure to authorize a second MRI; failure to authorize a psychological evaluation; and, (4) whether the WCJ

5

erred in failing to award attorney fees. We will first address the applicable standard of review.

Generally, in workers' compensation cases, this court reviews factual determinations under the manifest error/clearly wrong standard of review. *Turner v. Lexington House*, 14-1264 (La.App. 3 Cir. 4/15/15), 176 So.3d 1071, *writ denied*, 15-952 (La. 8/28/15), 176 So.3d 405. Thus, factual findings are reviewed to "determine not whether the trier of fact was right or wrong, but whether its conclusion was reasonable." *Id*. at 1076. "However, where legal error interdicts the fact-finding process, the manifest error standard is no longer appropriate[,] and the appellate court will conduct a de novo review." *Shailow v. Gulf Coast Soc. Servs.*, 15-91, p. 4 (La.App. 3 Cir. 6/10/15), 166 So.3d 1239, 1244, *writs denied*, 15-1336, 15-1355 (La. 10/9/15), ___ So.3d ___ (citing *Guillory v. Wal-Mart Stores, Inc.*, 01-127 (La.App. 3 Cir. 10/3/01), 796 So.2d 772, *writ denied*, 01-2988 (La. 1/25/02), 807 So.2d 844).

In his first assignment of error, Mr. Prince argues that the WCJ committed legal error; thus, de novo review is the applicable appellate standard. It is his contention that the WCJ "committed fundamental legal error . . . by crediting the opinion of Dr. Gidman, and ultimately relying upon the opinion of Dr. Budden, because neither Dr. Budden nor Dr. Gidman's opinions are in accordance with the [MTS]." He alleges that the WCJ rejected mandatory provisions of the MTS; therefore, the WCJ's rulings "flow from these fundamental legal errors, and all are erroneous as a matter of law." Thus, we must first discern whether the fact-finding process was interdicted by legal error.

Louisiana Administrative Code, Title 40, Part I, § 2013 through § 2024, set forth guidelines for treatment of injured workers with low back pain. Mr. Prince

6

asserts that the MRI performed two days after his injury, at Dr. Gidman's direction, violated diagnostic procedures set forth in the MTS. Mr. Prince argues that "[t]here was and is no medically valid reason for Dr. Gidman and Liberty Mutual to obtain lumbar MRI scans immediately after a low back injury of this type." He also faults the WCJ's reliance upon the medical opinion of Dr. Budden, whose ideology relative to annular tears differs from the mandates of the MTS.

Mr. Prince directs us to our supreme court's decision in *Church Mutual Insurance Co. v. Dardar*, 13-2351, pp. 19-20 (La. 5/7/14), 145 So.3d 271, 284, (footnotes omitted)(emphasis added):

> With the express intent of delivering health care services to injured employees "in an efficient and timely manner," La.R.S. 23:1203.1 adopts evidence-based medicine as the guidepost for assessing whether the medical care required to be provided under La.R.S. 23:1203 is necessary. To that end, La.R.S. 23:1203.1 requires the promulgation of a medical treatment schedule, which consists of a list of preauthorized procedures, administratively developed and approved according to criteria set forth by the statute. These preauthorized procedures provide a benefit and advantage to injured workers and their treatment providers who are relieved of the burden of establishing the medical necessity of the preauthorized procedures and, at the same time, impose a clear-cut obligation on employers. By their terms, La. R.S. 23:1203.1 and the medical treatment schedule do not exclude any particular care. Instead, these provisions represent and reflect a rational policy choice by the legislature to confer authority on the Director of the OWC, with the assistance of the medical advisory council and the medical director, **to determine in advance the medical necessity for certain medical care**, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process.

He argues that greater weight should be afforded to the MTS and the established guidelines which set forth a treatment protocol, particularly when faced with the opinions from physicians who do not agree with the MTS. We agree.

The record reveals significant weight was given to Drs. Gidman and Budden and relatively none to Dr. Butler. In his oral ruling, the WCJ specifically referred

7

to the medical reports of Dr. Gidman dated September 25, 2012, and July 2, 2013, and he quoted extensively from the October 9, 2013 medical report and subsequent trial deposition of Dr. Budden. The WCJ supported his ruling, particularly his reliance on Dr. Budden's opinion, by quoting the following from this court's holding in *Richardson v. Lil' River Harvesting*, 09-1090, p. 2 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, 419, as follows:

> An IME's medical conclusions should be given significant weight because the IME is an objective party. *Scott v. Wal-Mart Stores, Inc.*, 03-858 (La.App. 1 Cir. 2/23/04), 873 So.2d 664; *see also* La. R.S. 23:1123. However, the opinion of the IME is not conclusive, and the workers' compensation judge must evaluate all of the evidence presented in making a decision as to a claimant's medical condition. *Mosley v. Pennzoil Quaker State*, 37,199 (La.App. 2 Cir. 7/23/03), 850 So.2d 1100[, *writ denied*, 03-2412 (La.11/21/03), 860 So.2d 553].

Although accurate, the quote from *Richardson* is piecemeal and does not tell the whole story. It fails to mention another equally important decree which this court made immediately thereafter: "As a general rule, while the trier of fact is required to weigh the testimony of all medical witnesses, the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice. *Scott*, 873 So.2d 664." *Id.* at 419-20.

It is significant that in his deposition testimony, Dr. Budden does not agree with the MTS. Therein, Dr. Budden testified that he was aware that Mr. Prince had undergone a second MRI subsequent to his examination of Mr. Prince. Counsel for Mr. Prince asked, "What do we do with a patient that has muscle spasms 14 months after an accident[,] and the MRI that he had was two days after the accident? What do you do?" Dr. Budden replied, "Well, in retrospect now, I think they were correct in obtaining an MRI scan, and, apparently, that's what they did." Counsel for Liberty Mutual asked, "Is your review of [the second] MRI consistent

8

with the report that was issued by the radiologist at Envision?" Dr. Budden responded:

> I believe it is with one exception. On the report from Envision Imaging, the radiologist did mention an annular tear. The annulus being the wall of the disc. There is a big point of controversy among neurosurgeons and orthopedic surgeons as to the relevancy of that. Based on my teachings[,] that should not produce any symptoms, but there are some advocates that say yes an annular tear can produce symptoms.

Counsel for Mr. Prince asked Dr. Budden if he had an opinion as to whether the annular tear was caused by the accident, to which he replied: "I think it's more probable than not that it probably did occur at the time of the accident." However, when asked by Mr. Prince's counsel whether it was appropriate for Dr. Butler to recommend Mr. Prince for a psychological evaluation to determine if he is a candidate for lumbar surgery, Dr. Budden admitted, "It's almost like the annular tear. There's [sic] two schools of thought. I don't believe in discography, and I think the majority of orthopedic surgeons and neurosurgeons would agree with that. But again, there is a school of thought that a discography gives valuable information."

Mr. Prince protests the first MRI. He argues that it was neither medically valid nor in accordance with the MTS. The medical records confirm that the prescribed diagnostic protocol contained in La.Admin.Code Part I, § 2019 (C) was not followed. An MRI "usually is not appropriate until conservative therapy has been tried and failed." *Id.*

Here, the first MRI was performed on Mr. Prince two days after his injury, clearly before it is prescribed under the MTS. Once conservative treatment was tried and had failed, and Dr. Butler sought to have a second MRI performed to ascertain why Mr. Prince's condition was not improving, Liberty Mutual denied it

on the basis that one had already been performed. The effort to control the diagnostic process and ignore the mandates set forth by the MTS cannot be overlooked, nor can we ignore Dr. Budden's dispute with the treatment protocol of the MTS. We find that the WCJ's election to afford greater weight to Drs. Gidman and Budden over Dr. Butler, the treating physician, was legal error. Accordingly, we have conducted a de novo review of the evidence relative to the remaining errors assigned by Mr. Prince.

Considering the evidence, the medical opinion of Dr. Butler, and the objective evidence of injury contained in the November 2013 MRI, we find that Mr. Prince was not at maximum medical improvement (MMI), and he is, thus, entitled to all benefits, medical and wage, which flow therefrom. The WCJ ruled in favor of Mr. Prince, ordering Liberty Mutual to reimburse him for the cost of the second MRI; yet, Mr. Prince was denied an award of a penalty and attorney fees for Liberty Mutual's failure to authorize said MRI. Mr. Prince asserts error in this, as well as the denial of a penalty and attorney fees for Liberty Mutual's failure to authorize a psychological evaluation. We agree.

Louisiana Revised Statutes 23:1201 governs the award of penalties and attorney fees in workers' compensation cases. The failure to authorize necessary medical treatment is considered a failure to furnish medical benefits, as required by La.R.S. 23:1203, and will subject the employer to penalties and attorney fees pursuant to La.R.S. 23:1201(F).[7] However, penalties and attorney fees "shall not

---

[7]Louisiana Revised Statutes 23:1201(F) provides, in pertinent part:

[F]ailure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed

apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2).

Dr. Butler's medical records reflect consistent symptoms and reports of pain throughout his treatment of Mr. Prince, which physical therapy, medication, and pain management injections failed to stop. In following the treatment protocol prescribed by the MTS, Dr. Butler seeks the next step in the process, a psychological evaluation, which is a precedent to discography. Liberty Mutual justified its termination of Mr. Prince's TTD indemnity benefits and refusal of further medical treatment, i.e., the second MRI and psychological evaluation, on the basis of Dr. Budden's IME report. We find the denials of Mr. Prince's medical treatment to be squarely within the control of Liberty Mutual. Having rejected the medical opinions of Drs. Gidman and Budden, we find that the information supplied by and the medical opinion of Dr. Butler supports the award of a penalty against Liberty Mutual for its termination of Mr. Prince's TTD indemnity benefits. Due to its denial of the second MRI, we order Liberty Mutual to pay Mr. Prince a penalty of $2,000.00. Due to its denial of the requested psychological examination, we order Liberty Mutual to pay Mr. Prince a penalty of $2,000.00. Finally, Liberty Mutual is ordered to reinstate Mr. Prince's TTD indemnity benefits retroactive to October 9, 2013, and we award a penalty of $2,000.00 due to its termination thereof. We award Mr. Prince attorney fees in the amount of $3,500.00.

claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.

11

**DECREE**

For the foregoing reasons, the March 24, 2015 Office of Workers' Compensation judgment is reversed. Superior Energy and Liberty Mutual are ordered to pay for a psychological evaluation of Mr. Prince, as recommended by Dr. Butler, and reinstate TTD indemnity benefits retroactive to October 9, 2013. Further, we award Mr. Prince penalties in the amount of $6,000.00 and attorney fees in the amount of $3,500.00. For work done in connection with this appeal, we award Mr. Prince attorney fees in amount of $2,500.00, for a total attorney fee award of $6,000.00. All costs are assessed against Defendants/Appellees, Superior Energy Services, LLC, and Liberty Mutual Insurance Company.

**REVERSED AND RENDERED.**